Welcome, everybody. Judge Brasher and I are pleased to be here on the telephone. We have Judge Branch, so the voice of God today will be played by Judge Branch. We will, she will of course participate in the oral argument as if she were here in person, and I might try at the end because we all know that participating telephonically can be a little difficult. I might try at the end, before the end of your presentation, to stop, ask Judge Branch if she has questions that she wants to ask. I suspect that you guys have done this before. This isn't your first rodeo, but we have read your briefs. We've read the underlying cases, the materials, the record references, and so we urge you in your limited time to go ahead and just get right to the point that you have to present to us today. Also, please be aware of the timing system that we have. I'm not one to cut you off in the middle of a sentence, but when you see the red light, please do begin to bring your remarks to a close. And with that, we'll call the first case, which is 20-13705, Dragomirescu, close enough? Dragomirescu v. U.S. Attorney General. Ms. Diaz, you're here for the petitioner. You may proceed. May it please the Court. My name is Leslie Diaz, and I represent the petitioner in this case, Mr. Dragomirescu. In this petition for review, we are seeking a remand to reopen my client's in absentia removal order on the basis that he did not receive a notice to appear. The U.S. Supreme Court, in the last three years, has had two occasions to consider the notice to appear requirements in Section 239A of the Immigration and Nationality Act. And in those cases, they have told us that a notice to appear that does not include the time and date of the hearing is not a notice to appear because it does not have the essential character of that document. Secondly, most recently, in Ms. Chavez, the Supreme Court has said that the notice to appear contemplated in INA 239A is a single document that must contain all of the information such that you can't cure a defect in the notice to appear with a later hearing notice. So can I ask you a question? Because Ms. Chavez, to me anyway, is kind of a difficult opinion to read because on the one hand, the court seems to be talking about the specific language of the stop time rule, in particular, the use of the indefinite article A, right? A notice to appear. And that seems specific to the stop time rule. But then there's this paragraph where the court also seems to say that internal to 1229A itself, little a, sub a, that there's also an indefinite article that exists outside the defined term. So which is it? Like is Ms. Chavez really a stop time rule case or is it really a 1229A case? Yes, Your Honor. I would state that Ms. Chavez is a 1229A case because the indefinite article that he's analyzing there is actually in that statute, 1229A, the notice to appear defining statute. It says that a notice to appear shall include the following information. And so I would say, I would submit that it is a 239A decision. And that's the key here. And that's why we are asking the court to apply those holdings to the in absentia scenario. Because both the stop time rule and the in absentia provision textually reference 239A. What do we do with Perez-Sanchez, I believe is the name of the case, where we said that a notice to appear that is missing a hearing date and time is sufficient to give jurisdiction to start the jurisdictional issue? I would say that this is a separate issue from that. This is not a jurisdictional issue. I think it's settled and conceded at this point that a deficient notice to appear is not a jurisdictional issue. It's simply an issue of whether, in particular to this case, whether somebody who has received a notice to appear that's not complete has actually received a notice to appear. Well, I guess that's where the jury, I mean, I get your point that like you're making sort of technically a different argument. Right. But it seems inconsistent with what we said there that the NTA, even though it didn't have the time and date, was good enough to put the personal notice, good enough to start the case and give jurisdiction. Right, right. But the court, you also said in that case that that the subsequent notice of hearing does not cure the deficiency in the actual notice to appear. And it might go to a harmlessness analysis, but that there is still a deficiency. And the court rejected the BIA decision, Bermuda's COTA at that time, stating that the deficiency could be cured by a notice of hearing. On the harmlessness issue, so correct me if I'm wrong about this, but the way I understood this is that the notice to appear goes to an address that is, in fact, the address where your client lives. He says he didn't get it. The notice to appear is missing the date and time of a hearing, but he wasn't removed in absentia pursuant to that notice to appear. He was removed in absentia pursuant to a notice of hearing that came later. How does he know that that error, the failings with the notice to appear is harmful to him when he wasn't removed pursuant to that notice to appear? Does that make sense? Right. The harm there is that the document that he received, because the Supreme Court's decisions would show that this was not a notice to appear, it's as if he didn't receive anything at all. Yeah, see that's where, I mean, if that's true, I guess, that seems inconsistent with what we said in Perez-Sanchez, that somehow this document just doesn't exist and it's like a legal nullity because it's missing the hearing and the time. Right. I see what you're saying. Right. I mean, the missing pieces of the notice, so I mean the notice to appear had, correct me if I'm wrong, it had, you know, you need to update your address, you're being removed, all that stuff, it just didn't have a date and a time. Right. And I guess what I'm trying to figure out is how did the missing date and time affect your client? It affected my client because he, you know, he wasn't put to notice on when he was to appear. And that's why the Supreme Court has said that a document that's missing the date and time is not a notice to appear because it lacks the essential character of that document. It does not tell you when and where to appear, which is critical information to determine that, so. And so I could, I think that would be a really strong argument if he were removed pursuant in absentia at a hearing that was related to the notice to appear, but he was removed for he didn't get because he didn't update his address, right? Right. He, that's correct. But how, I don't understand how that could occur because there was no hearing set in that notice to appear. Well, I mean, let's just assume, let's just assume as a hypothetical that there were an address and a date in that notice to appear, but, you know, it turns out that he wasn't removed at that one and there was a new notice of hearing issued with a new date and a new time. Right. Wouldn't we have to look and see whether there was something that happened with that notice of hearing because that was the hearing that he was removed at? I mean, it seems like the notice to appear issue is kind of irrelevant. Well, when you get to that point, because if you look at the statute, the rescission statute, it says that if you, if you can show that you were removed at that date, then you can get rescission of your own absentia order. And so that's, you know, that's put in the disjunctive. So you need to show one or the other. And, but I mean, I agree with you that that's in the disjunctive, but wouldn't the one that mattered be the one that was relevant to the hearing where you were actually removed in absentia? Right. It seems odd to me that you could say, for example, that the, I didn't get the notice to appear. Right. But you know what? That didn't set the hearing at which I was removed anyway. It was the notice of hearing. That was the one I got. Right. And that was where I was removed. I mean, do you see my point? I do see your point. The argument that we're making is that the not receiving the second notice was due to not having been served with a notice to appear that, you know, that would warn you that you have to change your address. So because it was deficient, it should not be considered a notice to appear at all. But the notice to appear did tell him he needed to change his address though, right? That wasn't the problem with the notice to appear. The problem with the notice to appear was the missing date and time of the hearing. That's correct. Okay. So just to pick up on Judge Brasher's question, is the problem then, in some respect for you, like a severing of the causal chain or something? I mean, maybe this goes to harmlessness, but if the notice to appear, it didn't include the stuff that we now know from Pereira and Ms. Chavez it had to include. Right. But it did include, hey, change your address. And there's no reason to think he didn't get the thing that was called notice to appear. And so it was on notice that he needed to change his address, which he didn't do, and thus he didn't get the key document, which is the notice of hearing. Correct. Except, you know, I would just note that he does claim that he did not actually receive that paper. And that's our second argument in this case, is there's the straight VIA precedent in terms of proving that you didn't receive notice. And our argument in that case is, you know, his claim is he didn't receive it. There is case law defining when a notice to appear has been sent by regular mail, there's a lower presumption that it was received as opposed to when it's hand-delivered or certified mail. And so there's an analysis that the IJ is supposed to do in that case to determine not just what evidence do we have that he actually didn't receive it. Sometimes things don't get received in the mail and there's no explanation for it. But also, what incentive did he have to come to court if he had received it? And additionally, you know, did he act quickly on his rights? But if we conclude with respect to your secondary argument that the immigration courts, plural, didn't, you know, they didn't use their discretion in concluding that this presumption was rebutted or whatever, it's a deferential standard of review. If we think you're wrong about your secondary argument, then as to the question that Judge Brasher was asking that I was sort of following up on about what I called the causal chain, if the thing, if the document that was titled notice to appear, even if in light of Ms. Chavez, it's not formally a notice to appear, but that thing that was received, we conclude, said change your address and he didn't, then is it sort of on him that the notice of appearing, the key document that Judge Brasher was referring to, wasn't received? I would not argue that it's on him because the statute, the rescission statute, clearly says if you didn't receive the document in accordance with 239A, and this is, you know, similar to the language of the stop time rule, which is if you didn't receive notice under 239A, then you didn't receive a notice to appear. And it's just, it's a plain meaning of the statute. So, and in Pereira, Justice Sotomayor did actually look at that language and she compared the language in the in absentia in accordance to, with the under 239A language in the stop time rule, and she noted that they were equivalent. And so I would, I see my time is up, but I would argue that that notice has to fully comply in order to be a notice to appear. And the fact that it didn't, he did not receive a notice to appear, and he did not receive the subsequent hearing notice, and therefore we would ask the court to rule as such and reopen his case. Okay, good. Thank you very much. You've saved some time for rebuttal. Yes. All right, Ms. Moresi, we'll hear from you remotely. Oh, I think you're on mute. Oh, there you go. And Judge Newsom? Oh, oh yeah, Judge Brasher, Judge Branch, I'm so sorry. Do you have questions for the petitioner? I did. Okay. Is it too late to? No, no, no, it's never too late. This is my fault for having failed to do what I promised you I would do. Ms. Diaz, I wanted to pick up with a question about the January 2016 mailing. And you have argued in your brief that the petitioner was not residing at the 437 Guilford Circle address at the time. But when, that's an argument in the brief, but when I start looking at the petitioner was living in January 2016, other than in his I-485 application to the Department of Homeland Security, that he did in fact live at that address. Do we have any record evidence other than in his I-485 application that says he lived at 435 Guilford Circle in January of 2016? Is there any evidence to the contrary that he lived elsewhere? No, Your Honor, there's no evidence to the contrary. And I would apologize. I think my brief, I may have misunderstood the fact at that point or just inartfully explained it. But it does appear in the record that he had post hoc, you know, after the notice to appear had been sent to him in subsequent filings that he did to DHS for a green card application, he had indicated his address history. And he had shown that at the time the notice to appear was sent, he was residing at that address. There may have been a situation where he was in the middle of ending his marriage and maybe he wasn't staying there all the time. I don't know. But absolutely there's nothing in the record that he lived at that address in January 2016. It's that he's arguing, even though that was his residence, he did not receive the January 2016 notice. Yes, Your Honor. Okay. That's all I have, Judge Newsom. So sorry about that. I'll do better next time. Thank you very much. All right, Ms. Moreci, let's hear from you. Good morning, Your Honors. My name is Christian and I'm appearing on behalf of the respondent. Your Honors, in this case, the agency did act within its broad discretion in denying the motion to reopen that petitioner premised on a lack of notice because the agency did fulfill its obligation of providing petitioner with notice of his removal proceedings. And that right to notice ended when petitioner forfeited his right to and petitioner being provided with this notice. He was given notice of the initiation of his proceedings with the notice to appear that was sent via regular mail to the address that petitioner provided to the government and that petitioner, not just once in the 485, but also in the 751 application included in the record, petitioner lists as his address during that time. And as to the comment that he may have been away from the address because of divorce proceedings, the timeline in the record also shows that the divorce was finalized more than a year earlier in September 2014. So according to petitioner's multiple own admissions, he lived at this Guilford Circle address where the notice to appear was mailed and perhaps telling me there's no this notice. These are arguments that have been put forth by petitioner's counsel in briefs, in briefs of support of the motion to reopen before the agency and before this court, which does not constitute evidence of non-receipt in this case. So let me ask you this question. So all of that goes to what petitioner was saying is a secondary argument. What do you make of what I take now to be the primary argument that the notice of appear simply wasn't a notice of appear in light of Ms. Chavez? Your honors, we would respectfully disagree. We would contend that Ms. Chavez contemplated the specifically the stop time rule and that that's not implicated by this case and doesn't go to the holding that this was a nullity or that it did not exist because of its failure to include the time and date and that that information was provided subsequent to the notice to appear, which was properly served on petitioner. We would contend and petitioner did not overcome the presumption of delivery for the notice to appear. If we were to conclude that Ms. Chavez does speak to 1229A and not solely to the stop time rule, would you acknowledge that there needs to be a remand to the BIA for reconsideration or some such in light of Ms. Chavez? But I recognize that you dispute the premise, but if you accept the premise, then what? Your honor, I still think that in this case, there could be a distinction drawn under circumstances where a petitioner doesn't provide current or updated address information. I know that petitioner in a 28J letter has cited an out-of-circuit case, the Rodriguez decision in the Fifth Circuit, but even the Fifth Circuit more recently, I believe a week or so ago, issued a case distinguishing those circumstances from circumstances in a case where a petitioner failed to update the government with a current address. Would you provide, maybe I should know it, but I don't know it. Would you provide us with that citation to the more recent Fifth Circuit case? Because I guess I had read Rodriguez and thought, boy, this is very close to our case. Yes, your honor. I was debating filing a 28J letter. We typically don't for out-of-circuit cases, but this was just issued. It is SpagnolBastos, S-P-A-G-N-O-L dash V-A-S-T-O-S. And that's in the Fifth Circuit. And it is, it's just, it's still on Westlaw, 2021 W-L-5-7-5-5-4-1-4. Great. Thank you very much. It was issued on December 3rd, docket 20-60139. So that's a case you say where it's like Rodriguez and like this case. And so, because as I read Rodriguez, the court says, the Fifth Circuit says, and I think perhaps quite rightly says, that Ms. Chavez really is not just a stop time rule case, that there's this passage of Ms. Chavez that clearly construes 1229A as a standalone thing and says it too has an indefinite Article A that exists outside the defined term. And so, on that score, Rodriguez would map onto this case, but you're telling me that SpagnolBastos says not in a circumstance like this one where there's a failure to update address information. Yes, Your Honor. In this Fifth Circuit SpagnolBastos case, they specifically say SpagnolBastos' reliance on Rodriguez is misplaced because unlike SpagnolBastos, Rodriguez provided immigration authorities with a viable mailing address and therefore didn't forfeit his right to notice under 1229A. And similarly here... I guess I'll read the decision in due course, but you can go ahead and spoil the surprise for me. Is the basis for that decision something like what Judge Brasher and I were talking about? I think he was using the harmlessness language and I was talking about severing the causal chain, but is that basically the idea? Yes, Your Honor. And that's certainly what we would contend here, that the error was harmless insofar as Petitioner was provided with additional notice of the time and date of his proceedings in the hearing notice, which he did not get because he forfeited his right to such notice by not updating the court with his address. And statements to the contrary through Petitioner's opening, and I believe reply brief stating that he obviously must not have received the notice to appear because he didn't receive the hearing notice. Again, all of those don't reflect evidence from the timeline of these proceedings regarding where he lived at what point in time that he did live at the exact address, save for one letter, an extra letter R in Marietta where the notice to appear was mailed, but did not live at that address when the other documents, the hearing notice and the removal order were issued to him, which seems to be indicated insofar as when they were turned to the court as undeliverable. I believe the removal order even stated, you know, not at this address. So, I mean, here's the causal, you know, I don't know how the best way to frame this is, but sort of my issue is, if he had gotten a notice to appear that had an address and had a date, it still wouldn't have helped him, right? Because he wasn't removed for failing to show up at that hearing. He was removed to fail to show up at a hearing that was, that came in the notice of hearing, the later hearing, right? Just to make sure I'm following. So, if the notice to appear included one time and date and the hearing notice changed that date? Yeah, if it included everything it was supposed to include, it still would not have helped him because he, their ultimate, you know, the notice of hearing would have changed those dates anyway, right? Yes, Your Honor. And so, there are lots of things, I mean, the statute requires lots of things in a notice to appear. Nature of the proceedings, legal authority where the proceedings are conducted, acts or conduct alleged to be in violation of the law. It's basically a charging document. This, am I right in understanding the record that this had everything that it was supposed to have except for the date and time of the hearing? Okay. Yes, Your Honor, including listing out petitioner's obligations to provide the court with address information and to promptly notify the court of any address change and warning of the consequences of a failure to do so and that in absentia, removal order could be entered in his absence if he didn't follow through with those obligations. So, again, he was provided with those warnings and informed of those obligations in the notice to appear which, by all indications, made its way to petitioner and that petitioner hasn't rebutted through evidence to the contrary beyond his counsel's speculation that perhaps for some reason he may not have received this. And after that point in time, once petitioner moved in, I believe, May 2016 but did not inform the court of that change in address, beyond that point in time, there was not an obligation to continue to provide notice to petitioner because he forfeited that. He cannot come back now and say that his case should be reopened based on a lack of notice where he forfeited his right to such notice. So, can I ask you, this may be a remedial question, but so in a NIS-Chavez compliant notice to appear where it includes all of the charging information with the date and the time, then even in that circumstance, and I guess this is the world we will live in on a going forward basis, there might still be a notice, a subsequent document that's called a notice of hearing that then might change the date and time of the hearing. Is that how it works? Or does a compliant notice to appear sort of take care of steps one and two, so to speak? I suppose there could be, there wouldn't have to be a subsequent hearing notice, but there certainly could be. In cases, there's often more than one hearing notice issue that dates and the dates change for these hearings, sometimes at, you know, petitioner's request. So, there, I would say there could be situations where either occurs, where the date and time on the hearing notice does, in fact, end up being the time and date of the initial hearing and there's no hearing notice issued after that and other circumstances in which there are one or multiple hearing notices issued before you get to that preliminary hearing. So, it could be, and I'm not sure this affects the analysis at all. It just helps me to get my head around the process. It appears, and that's it. And then there's a hearing with no further notice, and then there's a removal order. Yes. Got it. Okay. That's helpful. Thank you. What are you doing in light of News-Chavez? What's the, I mean, I know that previously the department's kind of practice was to give notice to appears without any date or hearing. Are you still doing that or are you doing something different? It's my understanding that they're including it now, although those cases haven't made their way to us just yet. I see. But, I mean, are they just, is the practice, I mean, I understood from this, from just reading the Supreme Court's opinion, that part of the reason why those were left blank is because otherwise you're sort of setting a hearing that's never going to happen because you're just, you know, you're giving it to someone who's, like, just crossed the border or you're sending it to someone to let them know they're under deportation proceedings and you don't expect the hearing to happen at that time anyway. So, I mean, I guess to go to Judge Newsom's question, is one of the things they're doing now just setting sort of like a fake hearing with that notice to appear, that then's sort of necessarily going to be modified because, you know, that's not the real hearing date anyway? Is that to try to get around that? Sure. And I actually, Your Honor, don't have all of the information about the specific discussions of, I assume, and from what we've understood, hearing dates would be included on the notices to appear. But as to how that works or how often that would or would not wind up being the hearing date, I don't have that information. Let me ask, while you're at a pause, let me ask Judge Branch if she has questions. I do not. Thank you. Your Honors, I believe that most of the issues have been covered. To touch briefly on the sufficiency of the notice, which has already been touched upon, and again, that Prairie issue, we would, as we explained in our brief contend, and Petitioner concedes, was not a jurisdictional issue, but a claims processing issue, and that, in this case, the purpose of claims processing rules are to maintain order, and here, to ensure that petitioners appear for their hearings and know the time and date of their proceedings so that a schedule can move forward, and that any such rule can be forfeited if it's not timely raised by the movement. And here, Petitioner's underlying proceedings and waiting until three and a half years later in his July 2019 motion to reopen would have not been an example of timely raising this issue such that it was forfeited or, as discussed earlier, harmless error. And unless there's any other questions for those reasons and the reasons discussed in Respondent's brief, we would ask that the court deny this petition for review and uphold the agency's decision that the agency acted within its discretion in denying reopening in this case. Thank you. Thank you very much, Ms. Moreci. Ms. Diaz? And before you get going, I was going to ask, and I guess I'll still ask you, but I think what we'd like to do is to have Ms. Moreci file a 28-J on the Fifth Circuit decision, Spagnol-Vastos, if I'm pronouncing that correctly, and then give you seven days to respond to that, because the case does seem pretty similar. Frankly, walking into the courtroom, I thought Rodriguez was pretty similar, and now this Spagnol-Vastos may be even more similar. Do you, not that you need to, since you'll have an opportunity to do it in writing, but do you have a reaction to Spagnol-Vastos? And I guess just in the abstract to Judge Brasher's question, which I think is a good one, even if the notice to appear here had been Ms. Chavez compliant, how in the circumstances of this case would it have mattered? Would it have helped? Okay. In terms of the new Fifth Circuit case, I know I've read that case, but not having it before me, I'd probably defer to that. Totally fine. But I would say, you know, Rodriguez, the facts are very similar to this case, and that, you know, the only difference is that he doesn't claim that he didn't receive the notice to appear, but he still didn't change his address, and so I don't see how it can be distinguished from this case. We have a notice to appear that's not compliant, that may, you know, either was notice, and in this, in Rodriguez, he doesn't claim that he didn't receive the, or he, there's no evidence that he didn't receive the hearing, the subsequent hearing notice. In our case, we do have evidence that he didn't receive it, regardless of whether that was on him or not, because he didn't change his address. But that's a, that's a, maybe I'm not tracking, but that's a pretty big regardless, right? I mean, if it's, if it truly is on the facts of this case, sort of like on him, so to speak, and I recognize that's my characterization, not yours, but if it is on him, then back to my causal chain problem, I don't really see how that can be laid at the feet of the immigration authorities. Right, and I did want to turn to the, the actual statutory analysis, because we have two provisions in the rescission statute, or I'm sorry, in the 239A that are referred to in the rescission statute, Paragraph 1 and Paragraph 2, and Paragraph 1 is the notice to appear that's described in Ms. Chavez, a single document with all of those things, and Paragraph 2 is entitled a notice of change of hearing date, and the courts have, the Supreme Court did find that significant. How can there be, how can you call this a change of hearing notice when there was never any hearing set? And so I think that, you know, one could argue that the second notice that you received is not compliant with Paragraph 2, because it's not a change of hearing, it's simply setting the initial hearing. One of the, one of the, since you've raised that, Paragraph 2, one of the things that I'm trying to figure out how this works, and with this case, if it does at all, is Paragraph 2B, which says exception in the case of an alien not in detention, a written notice shall not be required under this paragraph if the alien has failed to provide the address, the change of address is what they're referring to, required under Paragraph 1F. What does that mean with that exception, if anything, for this case? I think it would mean if you got a compliant notice to appear that had all of the information, that would be a notice to appear, and that would put you on notice that you had to change your address, so that if you had, if you failed in that situation to do so, then there's no notice requirement. And I realize it's confusing, but I mean, these two statutes are in conversation, and I think you can't look at one without the other, and I see my time is up, so. So before you sit down, Judge Branch, do you have any questions for Ms. Diaz? I do not. Okay. Ms. Diaz, thank you very much. Ms. Moreci, thank you very much. That case is submitted, and we'll move on to the second and last case on a short day, which is 20-13251, McNamara v. Geico. We'll give you...